Paul Eugene APPELGATE,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C3-86-1625.

Court of Appeals of Minnesota.

Jan. 13, 1987.

Review Granted Feb. 18, 1987.

William G. Moore, Fridley, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant's driving privileges were revoked for failing a test taken pursuant to the implied consent law, Minn.Stat. § 169.-123. He petitioned for judicial review, contending that the initial investigatory stop was improper. The trial court sustained the revocation, and appellant brings an appeal from the trial court's order. We reverse.

## FACTS

On April 15, 1986, at approximately 2:25 a.m., Police Officer James Liddy of the Hopkins Police Department was parked at 11th Avenue and 6th Street South in Hopkins. He had responded to a call of a burglary in progress at an apartment complex nearby, and he was watching for traffic leaving the area. The officer saw a red Buick which was westbound on Westbrook Avenue; it stopped at 11th Avenue and made a "prolonged stop" before driving north on 11th. The officer noted another prolonged stop at 11th Avenue and 6th Street.

The officer stopped the vehicle and talked to appellant. He determined appellant was probably not involved in the burglary, but observed indicia of intoxication and requested that appellant submit to a preliminary breath test. Appellant took the test and failed. He was then placed under arrest for driving while under the influence and taken to the Hopkins Police Station, where he agreed to take the breath test and failed it. His driving privileges were revoked, and he petitioned for judicial review. The matter was initially heard by a referee who recommended that the revocation be rescinded because he found the stop invalid. The Commissioner filed a motion for review, and the trial court sustained the revocation, finding the stop valid.

## ISSUE

Did the arresting officer have reasonable and articulable grounds justifying the brief investigatory stop of appellant's vehicle?

## ANALYSIS

■ Appellant challenges the trial court's determination that the stop was valid. The test for determining the legality of the stop is whether the police had a particularized and objective basis for suspecting the occupant of the automobile of criminal activity. *State v. L'Italien*, 355 N.W.2d 709, 710 (Minn.1984), *pet. for rev. denied*, (Minn. Nov. 8, 1984). The officer may make his assessment on all the circumstances and may draw inferences and make deductions which might elude an untrained person. *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985).

The issue of whether there is sufficient reason to stop a person near the scene of a recent crime is addressed in 3 W. LaFave, *Search and Seizure* § 9.3(d) (1978). The problem is:

> whether a sufficiently detailed description can be obtained to justify the seizure of any particular person. Often only a rather general description can be obtained at the scene of a just-completed crime, but yet the need to take some action upon the basis of that description may be substantial, for experience has shown that when a victim or witness cannot name the offender his apprehension is unlikely unless he is rather promptly found in the immediate area.
>
> \*    \*    \*    \*    \*    \*
>
> What are needed and appropriate in this context are "selective investigative procedures" whereby seizures are made only of those as to whom there exists a "reasonable possibility" of their being the robber.

*Id.* at 83, 84 (footnotes omitted).

A number of cases have addressed the issue of whether a police officer had a reasonable suspicion to stop the occupants of an automobile based on a belief that they had been involved in burglary, theft, or vandalism. In each of these cases, there were specific facts linking the driver or the vehicle to the suspected crime. In *State v. Hiler*, 376 N.W.2d 760 (Minn.Ct.App.1985), an officer was informed that a possible theft occurred at a filling station. The informant described the vehicle, its license plate, and the suspected stolen property. *Id.* at 761. The officer subsequently observed and stopped a vehicle matching the description and carrying the described property. This court held that that stop was proper. *Id.* at 762.

In *State v. Giebenhain*, 374 N.W.2d 573 (Minn.Ct.App.1985), the officers were called after 2:00 a.m. by two volunteer firemen who heard suspicious noises and suspected a store was being robbed. The officers were further informed of a pickup truck which was seen leaving the area of the suspected burglary. As the officers were investigating, appellant entered the lot in a pickup truck. The officers were suspicious because none of the stores which used the parking lot was open. They stopped appellant. This court held that although the officers had no reason to believe that appellant was guilty of any of the crimes of which he was ultimately convicted, the stop was not a product of a mere whim. Considering the totality of the circumstances, the officers had reasonable suspicion that appellant was involved in a burglary. *Id.* at 575.

In *State v. DeRose*, 365 N.W.2d 284 (Minn.Ct.App.1985), this court also considered the issue of whether the officer had reasonable suspicion to stop a vehicle. The officer responded to a silent burglar alarm from a store. He arrived on the scene almost immediately and observed only one vehicle which appeared to take erratic and evasive action after seeing the patrol car. This court found that under these facts, the stop was not the product of a mere whim, caprice, or idle curiosity. *Id.* at 286.

In *State v. Ritchie*, 379 N.W.2d 550 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Feb. 14, 1986), this court found a sufficient basis for a stop when the officers arrived upon a scene within three to four minutes after a report of a crime in progress, the dispatcher supplied a description of the van and its occupants, and the vehicle was intercepted close to the scene of the crime. In *State v. Anderson*, 391

N.W.2d 527 (Minn.Ct.App.1986), a stop was valid when an officer arrived on the scene within one minute, a description of the vehicle included some particulars, and the vehicle was first seen close to the crime scene. *Id.* at 530.

In this case, the facts as found by the referee who heard the matter and adopted by the trial court indicated that the officer, who had responded to a call of a burglary in progress at the apartment complex, was watching for traffic leaving the area of the complex. The following finding was also made by the referee and adopted by the trial court:

> That Officer Liddy observed a red Buick westbound on Westbrook Avenue stop at 11th Avenue and make a "prolonged stop" before driving north on 11th. The officer followed the vehicle and noted another prolonged stop at 11th Avenue and 6th Street. The officer then stopped the vehicle between 6th and 7th Street.

It was upon these facts that the referee concluded that the Commissioner failed to show that the officer had articulable grounds to make an investigatory stop of appellant. He concluded there was no illegal driving conduct and no specific information to tie the appellant to the reported burglary.

The Commissioner brought a motion for review of the referee's recommendation pursuant to Minn.R.Civ.P. 53.05(2). The trial court, after reviewing the matter, determined that the stop was permissible. In the memorandum attached to the order, it made additional findings of fact:

> At approximately 2:25 a.m. the arresting officer observed a red Buick automobile leaving the apartment complex by way of one of the numerous exits from that complex.
>
> Although the arresting officer had no particular information to connect the red Buick to the burglary call, he decided he would follow the vehicle since it was the only vehicle which he observed coming from the complex at that time in the morning.

Thus, the trial court found that the officer saw the appellant leaving from the apartment complex, a finding which was not made by the referee. Rule 53.05(2) provides "the court shall accept the referee's findings of fact unless clearly erroneous;" *See Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 258 N.W.2d 762, 764 n. 2 (Minn.1977). We have carefully reviewed the transcript of the hearing before the referee, and we do not find support for this additional finding by the trial court. The referee's findings of fact were not clearly erroneous, and the trial court improperly made the finding that the officer observed appellant leaving the complex.

We agree with the referee's conclusion that the stop was illegal. The fact that appellant was driving down the street after 2:00 a.m. in an area in which the burglary suspect could have fled was not sufficient, without more, for the stop. There were no particular facts linking appellant or his vehicle to the crime. Nor do the prolonged stops provide a sufficient basis, either by themselves or in combination with other facts, to support the stop. *Blaisdell v. Commissioner of Public Safety,* 381 N.W.2d 849, 850 (Minn.1986); *Warrick v. Commissioner of Public Safety,* 374 N.W.2d 585, 586 (Minn.Ct.App.1985). The stop was invalid, and the revocation of appellant's driving privileges should be rescinded.

### DECISION

The revocation of appellant's driving privileges is rescinded.

Reversed.